CONSOLIDATED STORE-SERVICE CO. v. HERZOG et al.

SAME v. SEYBOLD et al.

(Circuit Court, D. Indiana. March 10, 1900.)

Nos. 9,594, 9,653.

PATENTS—INFRINGEMENT—CASH CARRIERS.

The Osgood patent, No. 357,851, for an improvement in store-service apparatus, which describes a cash carrier consisting of a box suspended by means of two grooved pulleys overhead from a wire along which it travels, and which differs from prior devices only in the fact that the wire is stretched taut horizontally, and the box is impelled along it by an initial push or impulse, was not anticipated, and is valid, but the advance shown over the prior art is so small that it must be given a narrow and strict construction. As so construed, *held* not infringed.

Suits in Equity for Infringement of a Patent. On final hearing.

Zollars, Worden & Zollars, for complainant.

John H. Whipple, for defendants in case No. 9,594.

F. J. Griffen and David H. Fletcher, for defendants in case No. 9,653.

BAKER, District Judge. These two suits were heard together. Each is a suit for the alleged infringement of letters patent No. 357,851, for a new and useful improvement in store-service apparatus, granted to Edwin P. Osgood, February 15, 1887. The application was filed June 7, 1883, and the evidence tends to show that the alleged invention was perfected on or about August 1, 1881. The defenses are want of inventive novelty, anticipation, and noninfringement.

The apparatus forming the subject of the patent consists of a wire way, tautly stretched, horizontally, from the cashier's desk to the sales station, and a car or carrier adapted to travel freely on the wire way, consisting of a box or receptacle rigidly connected with a wheel frame or truck having two grooved wheels, one at each end thereof, and in line with each other, which run one behind the other on the wire way, with the car or truck frame and box or receptacle hanging below the way. The only claim alleged to be infringed in the Seybold case is the first, which reads:

"(1) In a cash-carrier apparatus, a wire stretched horizontally between fixed supports at each end, and in the described relation to the cashier's desk, in combination with a freely-moving car held below the wire on wheel hangers to which it is rigidly connected, the wheels thereof being fitted to run one behind the other on the wire, whereby the car is held rigidly against oscillation longitudinally of the way; the whole moving structure being thus adapted to be impelled as a solid body from one end of the way to the other, in either direction, by the momentum imparted by a single impulse or push, substantially as described."

The prior art is well illustrated in the 19 patents introduced in evidence. One group of these prior patents comprises various forms of conveying, or elevating and conveying, apparatus employed in moving loads from one point to another. Such apparatus in

general comprises an elevated, stretched wire rope or track, and a trolley or traveler running thereon, usually, but not always, in the form of a two-wheel truck from or on which the object to be conveyed is placed or suspended. This form of apparatus also includes, as an essential part of it, some means for hauling or moving the traveler and its load continuously from one end of the track or way to the other. Among the devices of this form, the patent to Brown, No. 165,473, discloses an apparatus which most closely embodies the elements of claim 1 of the complainant's patent. Another group of the prior patents shows a gravity system of conveying apparatus in which the carrier is moved the entire length of the way by the force of gravity, the way having a suitable inclination for this purpose. The remaining group consists of patents illustrating various means for supporting and guiding movable objects, such as sliding doors, gates, shutters, and the like. The object is supported from a pair of overhead wheels, which travel along a supporting track above the object, and below the wheels. No further attention need be devoted to the patents in evidence, other than the patent to Brown, because it most nearly discloses anticipation, and, if that does not anticipate, none of the others do.

The Brown patent shows a rigid car or carrier suspended below the way from wheel hangers, the wheels of which are grooved and mounted, one behind the other, on the way, and adapted to be moved from end to end of the way by a cord attached to each end of the car or carrier, passing over pulleys at each end of the way. The car or carrier is moved along the way as desired by a pull upon the cord passing over the pulleys. No other method of movement is disclosed, and, so far as shown, no other mode of movement from end to end of the way was conceived of by the patentee. It had apparently never been conceived of by Brown or any one else that, by tautly stretching a wire horizontally, a car or carrier rigidly attached below the way to wheel hangers having grooved wheels, placed, one behind the other, on the wire, could be successfully moved from end to end of the way by an impulse or push. While the Brown patent, after removing the cord and pulleys, shows substantially the wire way and the rigid car or carrier of the complainant's patent, still no one before Osgood had conceived the idea that a store-service apparatus consisting of a tautly-stretched horizontal wire way, with a car or carrier rigidly attached to wheel hangers having grooved wheels, placed, one behind the other, on the way, was capable of successful operation by an impulse or push. This conception was novel in the art, and, as an operative mechanism, it was first embodied in the Osgood patent.

While I fail to find anticipation in any prior patent, it is not clear that the prior art was not so instructive as to deprive the Osgood combination of the novelty essential to support a patent. Osgood found in the prior art a wire way and carrier such as is used by him. The only advance made by him over Brown was in stretching a tautly-drawn wire horizontally, and in making the car or carrier somewhat longer, thus obviating longitudinal oscillation, and in omitting the cord and pulleys.

I am inclined to the opinion that the Osgood patent ought not to be held void for want of invention. Still the advance made by him over the prior art is so small that the claim of the Osgood patent must receive a narrow and strict construction, no broader than its very words require. Thus construed, does the device of the defendants Seybold infringe? This device consists of a horizontal wire way, having a car or truck suspended from a single wheel on the way, with a grooved wheel at the opposite end of the car or truck adapted to run against the underside of the wire, while the load to be conveyed is attached to the end of the car or truck furthest from the under wheel. Thus. it will be seen that, without a liberal interpretation of the doctrine of equivalents, there is no infringement. In my opinion, the doctrine of equivalents ought not to be so liberally construed as to hold that the defendants' device infringes the complainant's patent.

The Herzog car or carrier moves upon a wire having such an inclination that it is carried by gravity from the cashier's desk to the sales station. The wire way is neither horizontal nor substantially horizontal. In my opinion, also, the defendants' device does not have adjustable stops placed axially on the wire way, as defined in claim 2 of the complainant's patent. The defendants use, in combination with the wire way and car thereon, a buffer consisting of a collapsable chamber provided with a vent to permit the escape of air under the impact of the car. The collapsable buffer or chamber is fixed to the wire way, and is not adjustable to different points thereof, as defined in the second claim of the Osgood patent. For these reasons, the bill of complaint in each of the cases numbered 9,594 and 9,653 will be dismissed for want of equity, at the complainant's costs. So ordered.